Thank you very much, Mr. Kane. Our next case is number 20-2632, United States of America v. Mark Eric Icker. Mr. Ulrich. Good afternoon, Your Honor. May it please the Court, I'm Frederick Ulrich. I'm an assistant federal public defender in the Middle District of Pennsylvania, and I represent the appellant, Mark Icker. I'd like to reserve two minutes of my time for rebuttal. Granted. When Congress enacted the Sex Offender Registration and Notification Act, or SORNA, it specified and limited the reach of its regulatory framework to those individuals convicted of sex offenses. In other words, offenses that have, as an element, a sex act or a sexual conduct, or sexual contact, rather, or they fall within enumerated offenses within the other definition. The plain language of the statute does not extend to other offenses, and there's good reason for that. As this court recognized recently in Piasecki v. Puerto Como Police of Fox County, aspects of Pennsylvania SORNA, the one that would be applicable here, are restrictive, burdensome, onerous, and indeed, when imposed as part of the judgment, punitive. So it makes some sense that Congress would limit the reach of SORNA to individuals who've had a reasonable doubt determination that their offense falls within its purview, or that they've admitted to it as part of a guilty plea. Mr. Icker. Mr. Ulrich, if I could just interrupt for a second. If we agree with your statutory argument on SORNA, can you help us out with what limits, if any, the district court has to order conditions of supervised release that would be SORNA-like, if you understand what I'm saying there? Certainly, and actually, I think in this case, some of those conditions exist. In addition to ordering the SORNA registration, also ordered an evaluation, and counseling, and mental health assessment, and those kinds of things. And in the Tenth Circuit, in the United States v. Francis, a somewhat similar occurrence happened without the SORNA overlay, but the court ordered counseling and sex offender treatment, and those kinds of things. And the court has quite a bit of discretion to fashion those kinds of rehabilitative tools during the course of a three-year, two-year, one-year supervised release term. And nothing prohibits it from requiring counseling, requiring treatment, requiring an evaluation, requiring regular monitoring with the probation office. But it doesn't extend to ignoring the plain language of the SORNA statute. What about registration? Could the court say, this is not a SORNA case, it doesn't fit under the language of the statute, it wasn't an element of the offense, but based on the facts and details of this crime, I'm going to order state and federal registration as a sex offender? I don't think so, because then you're now doing something that Congress has limited in terms of its application. Does SORNA say you can't do it, or does SORNA say you must do it? I thought SORNA was compulsory. It required courts to put folks on the registry if they were convicted of a qualifying offense. That is correct. And the key to that is, which you just said at the very end, the qualifying offense. You have to be a sex offender convicted of a sex offense. And Mr. Eicher was not convicted of a sex offense. And the fact that that's mandatory for sex offenders, it doesn't follow as a matter of logic that it's prohibited if you're not within the bounds of the statute, does it? I think it does, because the language of the statute delineates individuals that have committed these particular crimes, where they've been found guilty by a jury beyond a reasonable doubt or pled guilty to them, and it subjects them to potentially decades of supervision or custody, as this court has characterized it, at least for purposes of habeas corpus, over up to a lifetime. If this case actually was subject to SORNA, then we wouldn't have supervised release governed by 3583B. It'd be over in K, where the court has a five-year mandatory and a lifetime of supervised release that they can use to correspond any sentence or conditions with the SORNA registration. Let me ask you a question, counsel. Um, let's take Judge Hardiman's hypothetical a little step further. If the court is empowered to impose SORNA-like restrictions on a defendant, let's assume for the moment that the court imposed all of the SORNA restrictions without making a finding that the offense was a sex offense, and without the language that appears in this J&C of must comply as directed. Would you have a claim that the district court in that hypothetical overstepped its bounds? I don't think the court would overstep its bounds if some of the requirements in terms of getting an evaluation, having sex offender treatment, and those kinds of things were tied to the three-year term of supervised release. But once you're talking about registering and doing those things, which, you know, in this particular case, I would imagine the state police would find that this is a lifetime registration period. Now you've stepped outside of the permissible bounds of discretion, which obviously are tied to the plain language of the statute. The statute gives the court a lot of discretion, but doesn't give it discretion to for SORNA registration. And I don't think that means that the court's without the power to address concerns over an individual's backgrounds, you know, or the fact that the charge bargain left out of the equation, the fact that this might have been a sex offense. They can address them. They just have to do it within the three-year period of supervised release, and they can't make them register and have community notification and regular appearances at the state police like you would under SORNA. They just have to do it a different way. And contrary to the government's argument, there's nothing in the judgment of conviction or the sentencing record in this particular case to suggest that Judge Mannion abrogated or delegated what he statutorily obligated to do under 3583 to the probation office. And nor would the courts want that. The probation office is not in a position, as some of these cases require, to make a determination of the categorical, modified categorical, or circumstance-specific approach as to whether some offense falls within or without SORNA's purview or outside of SORNA's purview. The judge ordered Mr. Riker must comply with requirements under SORNA. There is no language... Mr. Riker, I'm sorry to interrupt again. Let me follow up on Judge Greenaway's question. What statute or case law tells us that there is this line of permissible SORNA-like conditions, as the ones you mentioned, such as treatment, etc., that also tells us that registration is not permitted? Are you arguing sort of statutory silence? I'm not sure whether you're latching onto statutory language or case law to divide the permissible SORNA-like conditions from the impermissible registration. Well, I think it's a little bit of both. So the statute itself has limiting criteria. Why does it define a sex offender if that doesn't constitute a limitation on its application to particular cases? There'd be no reason for Congress to do that. There is a good reason. They're trying to limit the burdens that are associated with the statutory framework. In the case law, as I mentioned, there's a Tenth Circuit case where they discussed the ability of a court, United States v. Francis, to impose sex offender treatment as part of a civil rights release. But beyond that, there's nothing, certainly at the beginning of the statute, that says it can't be. Why is this assumed from the nature of its qualifying criteria? I think that's true in a lot of statutory circumstances. Congress doesn't come out and say, oh, this can never be applied here, here, and here. Instead, they create a definitional framework that allows its application in a certain set of offenses where there's been a determination by a jury or by a guilty plea that you have a qualifying offense. We don't have one. What in SORNA says that the counseling and reporting and the other things that you said are okay, what in SORNA tells us that the district court has discretion to impose those conditions? Nothing. Then where does the district court get the authority to impose those conditions? District courts have all kinds of authority to impose counseling or treatment conditions under 3553A that they think are going to further the rehabilitative interest of the particular defendant in front of them. That sounds like an inherent power of the sentencing also include registration. Well, for the same reason that the court couldn't say, I have inherent power to determine what kind of rehabilitation you need. You know what? I think I need more than three years. I need 15 or 20 years. The court couldn't do that either. The same thing is true under SORNA. They're applying a statutory framework that's limited to a particular subset of criminal cases. The court's power is circumscribed by the statutory language that in this case, the plain language of SORNA. Why wouldn't it come in under reasonably related under 3583? Why wouldn't you be able to impose as a district court the more quote-unquote SORNA-like requirements under reasonably related? Well, I don't know what the definition of SORNA-like requirements is other than... Just as a part of our hypothetical, I think Judge Hardiman has outlined them, right? Basically, what we're talking about is, is there a line to be drawn between what the inherent power of the district court is on the one hand and what's required under the statute on the other? In other words, without making a finding that Mr. Eicher has committed a sex offense, is the district court empowered to impose essentially all of the requirements that otherwise appear under SORNA? Not all of them. I think perhaps some of them, we've discussed those already, like the evaluations. But once you're stepping into registration for the rest of your life, once you're asking the defendant to show up for the next 25 years or 50 years at the state police barracks four times a year, once you tell them that he can no longer move, he can no longer buy a cell phone, he can no longer change his address, no longer stay in a hotel room more than three days without notifying somebody within a prescribed period, then you're outside of the principle bounds. Counsel, could I ask you to shift a little bit? I want to know, let's assume that this was an error. I want to ask about two related problems. The first one, your failure to object is a forfeiture and how we should understand that is, you know, whether it's plain because there's no circuit case on point. And then the second, after you discuss plain error, is the impact of the broad appeal waiver and whether the satisfies the contact factors, whether we have to go through those factors, whether this is a miscarriage of justice. Could you speak to each of those points, please? Certainly. In terms of plain error, we think the error is plain because Congress has prescribed a limited subset of cases that fall within this registration requirements, which this word is descriptive. They're fairly onerous, they're restrictive, and they last a long time. And this case doesn't fall within Congress's definitional framework of a sex offense. So the error is plain. It's burdensome because it's a lifetime registration requirement. And nobody's harmed except Mr. Eicher if he has to register. The government didn't negotiate any aspect of it. They could have simply charged Mr. Eicher under a subsection at 242 with a sex offense, and then we wouldn't be having this discussion at all. And his case would have qualified clearly. So they're not harmed because some interest they had independent of the plea agreement. And moving on to the appellate waiver, we think it should be unenforceable for two reasons. One, it falls within the miscarriage of justice exception because this sort of registration is akin to an illegal sentence. It exceeds the supervised release term. It's not statutorily authorized for a non-sex offense. And it's no different, at least from the standpoint of Mr. Eicher, than having a supervised release term extended from three years to lifetime. So even though this is a civil collateral consequence and not a criminal one? Yes. So the collateral consequence language that the Supreme Court has used to characterize things is a little bit interesting in this context. Yes, SORNA is a operating like the ones where you're not allowed to vote, or you're not allowed to hold public office, or you're not allowed to own or possess a firearm. It operates a little bit differently. And so when it's imposed as part of a judgment, it operates like a penalty. It's punitive, as Judge McGee found in his case. And so we believe that the context of whether this knowing, whether this appellate waiver was knowing, it wasn't relative to this particular consequence. And here's why. Most guys coming into court, or defendants coming into court, have little idea what their exposure is. But Mr. Eicher had a pretty good idea, not only did he get the benefit of his charge pardoning, but the government outlined in significant detail the guideline enhancements that would apply, the particular supervised release special conditions that would apply, the fact that he would suffer from a collateral consequence in terms of loss of his municipal police officer license, and there was a sentencing recommendation. And in the plea agreement itself, when it talks about, well, if the court doesn't accept that you're exposed to a 20-year sentence and three years of supervised release, there isn't any mention of SORNA anywhere. And when the judge and the assistant United States attorney covered the appeal waiver, it really didn't cover the breadth. And if Mr. Eicher went to SORNA and took a look at the statute, he wouldn't know that he was subject to this thing. So apart from the fact that it's a collateral consequence, at least in some form, and given these circumstances, we believe that the waiver, the appeal waiver should not be enforced here and should be excused. And I see that my time has expired, so I'll wait until rebuttal for any additional questions. Thank you, Mr. Ulrich. Mr. St. John. Your Honor, I apologize. I was struggling to un-mute my microphone. No problem. Good afternoon. May it please the court, Assistant United States Attorney Jeffrey St. John on behalf of the government. Your Honor, I'll begin with where counsel left off, which was the government's position, and we set that forth in point one of our brief, that this is a relatively straightforward case for waiver. The provision in the plea agreement, the appellate waiver provision in the plea agreement was broad but clear in its wording that this waiver would reach both the conviction and the sentence. And it's clear, the law of this circuit is clear that the sentence, the criminal sentence, includes not just the sentence of imprisonment, but it includes part of the sentence dealing with supervised release and supervised release conditions. In order for a waiver, counsel, in order for a waiver to be knowing, one must know at least the realm of possibility, you would concede as an initial matter that the offense that was pled to was not a sex offense. Is that right? Your Honor, the government does not outright concede that, no. And I can speak... Help me with that as an initial matter then, please. All right. Well, I'll jump ahead to that. And I want to make clear, it's not something we emphasize in our brief because we do believe that there are clear grounds for the court to decide this appeal. But we do believe there's an argument that the civil rights violation that Mr. Eicher pleaded guilty to, the two counts, do fall within the definition of SORNA sex offense. And I would point to the, obviously, the language that would be the candidate for this is the provision of the definition that says, does the offense have an element involving a sexual act or sexual contact? Now, I want to emphasize, it doesn't say, does the offense have an element, sexual contact, or a sexual act? It's does the offense have an element that involves sexual contact or a sexual act? As far as the elements of the two offenses of conviction here, three elements. The first is that the defendant acts under color of law. That's not relevant. The third is willfulness, but it's the second element that I would argue leads to the satisfaction of that definition, which is that the element was that Mr. Eicher deprived the victims of the right to bodily integrity. And I would argue that under that part of the definition of sex offense, it can be argued, and I think it's a relatively convincing argument, that that second element, the deprivation of the victim's right to bodily integrity involved sexual contact. Well, let me ask you, doesn't a battery do that? I'm sorry? Doesn't a battery deprive the victims of bodily integrity? Well, arguably, yes, or any other kind of physical violence could. You're not arguing a battery is a sex offense, are you? I'm not, but I am suggesting that that definition is worded broadly enough that the court could, in a statutory analysis, find in a particular case, in this particular case, and remember, Your Honor, we're dealing with a case not where the district court is looking at something the state court did years ago. This district court took the plea in this case. This district court obviously passed sentence. It knew all the facts. It knew what Mr. Eicher admitted to doing. All right, let's talk about the plea hearing. When the prosecutor did the proffer at the plea hearing, what did the prosecutor say the maximum supervised release term would be? I believe it was correctly identified, Your Honor, as three years. Well, that doesn't seem to put Eicher on notice that he would have a lifetime of what seems to be the inverse of that. Well, Your Honor, I'm a little bit confused by that argument because there are plenty of cases, for example, involving child pornography offenses where defendants are sentenced to five years of supervised release, but it's a known thing that they're going to have to register, and it could be for a much longer period than that. Ah, it's a known thing. You've got to listen to what you just said. It's a known thing. If everyone at the hearing knows, because it's discussed or because it's put on the record, that's one thing. But that's the point that we're trying to get at. Well, in any case where this particular condition is used, it's not a known thing. Because as the court knows, what we argue is going on here is the district court is not actually ordering registration. It's ordering the defendant to comply with SORNA as directed by these other authorities who may or may not. If Mr. Eicher were Jeffrey Dahmer, the same language would be used because that's the language that's used in the JNC, must comply as directed. So that's not particularly persuasive, right? Because people who fall clearly within the ambit of SORNA, who clearly have notice, who clearly wouldn't have a waiver applicable, would know. Your Honor, when you say clearly, how would we know, except in a particular case with a particular defendant who had particular counsel and the plea agreement was worded particularly, whether or not a given defendant would recognize that, okay, I got ordered to five years supervised release. But if the state registrating authority determines I should register under the SORNA, I may end up having to have this burden on me for many, many years beyond five or 10 years. I'm just pointing out that this mismatch, this possible mismatch between the statutory maximum for supervised release for this offense and the idea a person could be required to register for years is not unique to a civil rights offense. It can occur in any case where any clear, if you want to say clearer case of sexual offense, where the court imposes a lesser term of supervised release. We're talking about appellate waiver here and I'm just not seeing anywhere in the record where Eicher got fair warning that he could be required to comply with SORNA. Is it your argument that as directed does a lot of work here and that when he's released from prison, the probation office might not require him to register with SORNA? Is that your argument? That's certainly one aspect of our argument that yes. Well, then how could he, then it's not part of his sentence then because probation officers don't impose sentences. Judges impose sentences, right? Well, I'll stay with the appellate argument and just try to make the best argument I can for why this was knowing and intelligent, which it sounds like what the court wants me to do. It's clear from the plea agreement that supervised release conditions are part of the criminal sentence. The section of the plea that deals with supervised release comes under a heading called sentencing recommendation. Okay, so once we're at a place where Mr. Eicher understands that supervised release conditions in theory are part of the criminal sentence, right? He was told in open court that the maximum term of supervised release was three years, yet SORNA's minimum registration period is 10 years. You can't reconcile those two things, can you? Yes, I can because a term of supervised release is a different aspect of the sentence than what, and now I understand a little bit more what the court's prior question was that the ads directed is doing work here. And that's absolutely the case because a person is going to be on supervised, Mr. Eicher will be on supervised release for up to three years after he is released from custody. But presumably under the terms of what was ordered at some point shortly after he's released and when he's put on supervised release, he will have to present himself to one or more state registering authorities. And only then will the determination be made as to whether or not he has to register. Will he have waived his ability to protest that as directed at that time? Is that part of your argument that he's got to wait? Yes, I don't think I can speak to what his rights of redress would be if, for example, he argues later in the context and before that agency, and we don't know what state agency that's going to be because we don't even know where Mr. Eicher will live or work when he gets out of prison. And let's say he presents himself and they say, you have to register. He's going to have an opportunity to push back against that and should, he should have an opportunity before that agency to push back against that if he believes that he should not be required to register under SORTA. All right, but he then would have to go to federal court and seek a mandatory injunction declaring that he's not eligible or not required to register under SORTA, right? Well, I don't know if that would be the initial step. I suppose the initial step, and I can't speak to this, it would depend upon what the state registering agency has, but he could seek redress immediately through that agency. But if he doesn't get the relief that he wants, then arguably, yes, he might have to seek redress through the federal court system again. But that all sounds like you're hedging as to whether he is SORTA qualified or not. I mean, it just seems like we're not sure whether he's SORTA qualified and they'll sort that out later. Is that the argument? That's the argument in point two. And your honor, just to make myself a little clearer, we think the government's position is this condition is worded the way it is because it's a nod to the practical reality of how the situation works, right? The condition could be worded. You must register with SORTA. You must do that. No wishy-washy-nish about it. But the condition is worded as it's worded, which is you are directed to comply with SORTA as directed by these other decision-making authorities, including primarily the state registration authority, because it's a nod to the practical reality that the district court is not the one making the final determination, not just in this case, but in the run of cases. It's the district court is not really positioned to make that final determination because the district doesn't even know at that time where the offender is going to register. So it's a guess. Let's assume for a minute you lose on that. Let's assume that we say that it was legal error for the district court to say that he shall comply with SORTA because he's not a sex offender under the definition of SORTA. What's your fallback position? Do the inherent powers of the court allow it to place conditions upon ICAR that are SORTA-like? Well, sir, I'm happy to rely on the inherent powers of the court partly, but I also think there's some statutory authority there that allows the district court. It's 18 United States Code 3583D, which is just the supervised release statute, and we outline this in the third point of our briefing and in the supplemental letter that we provided to the court. It speaks first in terms of mandatory conditions, but then it notes that the court has a wide authority to impose discretionary conditions, any condition it deems appropriate, as long as the condition is reasonably related to the 3553A factors and involves no greater deprivation of liberty than is necessary. And we would argue that... Is your argument that reasonably related gives the district court and the probation office the inherent authority to impose all of the conditions available under SORTA? Our position is that a combination of the inherent authority of the court and this statutory, I guess, recognition of this authority would justify what the district court did in this case, because the facts of this, even if the court finds it doesn't fall under the definition of SORTA, what was clear is by the decision-maker in the district court after taking the plea in this case, hearing Mr. ICAR admit to having undue sexual contact with the victims, reviewing the PSR in this case, which was awash with facts of sexual misconduct, that the court could conclude that a registration requirement is reasonably related to the various 3553A factors that apply, including the nature and circumstances of the offense, again, steeped in sexual misconduct. Mr. Sinchon, so 3583 has two explicit... D has two explicit references to persons required to register under SORTA. It would seem that there's a negative inference there for people who are not required to register under SORTA, but at a minimum, wouldn't we apply the rule of lenity to say, yeah, it's technically civil, but this is part of a criminal judgment. If there's some confusion here, we're going to limit 3583D's scope to the people who are actually required to register under SORTA then. Is there a lenity doesn't apply? I would understand the court's perspective if 3583D ended with those provisions you're talking about, but the very same provision goes on to talk about the court's plenary authority to impose non-mandatory or supplementary, whatever the term would be, conditions of supervised release, again, so long as that reasonable relation is present and it's not a greater burden on liberty than required. So I understand the rule of lenity, and I understand that operates to the defendant's benefit in cases, but I think it's hard to apply that as squarely when you look at this particular provision and the plenary authority given at the conclusion of it to the district court. Well, it's not actually the conclusion. It mentions people required to register after that May order, D1, 2, and 3. That is correct, your honor. That is correct. Let's assume that you lose on that too. Let's assume we find there's an error. I want to hear you talk about whether the error was plain and also whether the appeal waiver covers it. Well, for all the reasons that I've gone through, it would be our position that any error here wasn't plain, that our position is the district court could have believed that it wasn't actually ordering registration, that it was simply basically putting Mr. Eichhorn on a path towards possible registration. The district court could have believed, and we don't know because there was no objection in the case, that this particular offense falls under the definition of sort of sex offense. The district court could have believed it was within its authority, as noted by statute, to add conditions so long as they're reasonably related to the offense conduct. Then when we get into doctrines of waiver and miscarriage of justice, one of the factors that's important in miscarriage of justice is to the extent to which the defendant acquiesced in what occurred. The court is pushing at me and saying, well, where was there any whiff that the defendant might have to register as a sex offense? You're talking about a defendant who admitted in the charging instrument to having unlawful sexual contact with the victims. The sexual contact appears in the information that the defendant pleaded guilty to. You're also talking about a defendant who in the plea agreement agreed in a joint recommendation in the plea agreement that he committed sex offenses and therefore that the sex offense guideline should apply. I think there was reason for Mr. Eichhorn to understand and know that this was a possible consequence of going forward with this plea of guilty. Although the title of the defense he was guilty to was a civil rights offense, its underlying nature was clearly and squarely of a sexual nature. Well, there's no doubt about that, but Mr. St. John, I was interested to hear you say the district court could have meant this, the district court could have meant that. You know, this court is in the business of reviewing what district courts do and what they, in the form of a final judgment or order, that's how we get our jurisdiction, and then we pay careful attention to what they say. And one of the things that's troubling me about this case are these unknowns to which you just alluded, and I think also Mr. Ulrich touched on this somewhat too, about well maybe the district court could have given counseling, supervision, etc. Why is it not the prudent thing based on the speculation and the do-over? Wouldn't that be the most fair thing we could do both to Mr. Eichhorn and the government, and frankly, fair to the district judge? Because if this court is left with confusion or speculation about what the district court was actually trying to do, don't we owe it, in this case, to him to give him a chance to explain it clearly so that if we do get it again, we know exactly what he did and what he meant? Well, your honor, my response to that would be, in the absence of surety about this, let's look to the language of the condition. And our position, the government's position, is the condition here that's the subject of all of this, the supervised release condition, is plain on its face without having to necessarily drill down into what the district court actually was thinking. Well, that presupposes that the Well, that may turn upon exactly what we understand the SORNA condition to be ordering. If all it's doing is ordering that the defendant comply with SORNA as directed by these entities, how could that not be valid? Well, here's one way that might not be valid. That sounds like an extraordinary delegation of power from a life-tenured federal judge to a probation department. Probation departments are in the business of executing and implementing judicial orders, not analyzing them, evaluating, and then making their own decisions, are they? Well, that's true for the probation department, and that is the weakest of the three entities that are mentioned there, because that one is under the thrall of the court to some degree. But the Bureau of Prisons is not. It's a separate entity of the government, and particularly the state agencies. Their whole reason for being is to engage in these analyses of who has to register and who does not. Well, it still seems like an even more extraordinary delegation of federal judicial power to the Bureau of Prisons or to a state agency. But anyway, your time's up. Why don't we give you a chance to wrap up, unless Judge Greenaway has any other questions or Judge Greenaway has any other questions. Thank you so much. Okay, go ahead and wrap up. Thank you for your time and for the extra time and for the questions. The court understands the government's position. It understands its layered arguments. We submit first that there was a waiver that ought to be enforced in this case. We submit second that the plain language of the condition under consideration is not a condition that's actually directing registration in the case. Your Honor, and then for the reasons I outlined as well, we would submit even in a situation where the court concludes that this was not a sex offense and that the district court was ordering the defendant to register, there is additional statutory authority for what the court did here under the provision of 3583D that we've spoken at at length. Thank you again, Your Honor. Thank you, Mr. St. John. Mr. Ulrich, would you start where Mr. St. John left off? Do you or just maybe if some other agency determines in its discretion, then he will have to register? The judge's plain language, Judge Manion said he must comply with the requirements of the sex offender registration notification act. I couldn't be more clear. Part where it says as directed to, well, that makes sense because what happens is as you approach the end of your sentence, the Bureau of Prisons is supposed to notify the probation department and notify the Pennsylvania State Police and notify the places where you're going to live. They know where you're going to live when you're getting out of jail. You have to fill out a home plan. So they notify all these agencies. So when he comes into his probation department and meets with the officer, the officer says, you have to go to the Pennsylvania State Police barracks on Elmerton Avenue in Harrisburg, or you have to go to the Pennsylvania State Police barracks in Spratt. They tell them where to go. It's a ministerial function. As Judge Hardiman, as you pointed out, the probation office is not making a determination as to whether some offense falls within or outside of the jurisdiction of the district court. So you might just send this back summarily for a complete do-over without constraining the district court in any way and almost as if this appeal never happened, almost as if the sentence never happened. Just go back to the status quo ante. Isn't that the prudent thing to do? It might be the prudent thing to do, but I still don't know if it's actually necessary. In this particular case, some of the concerns you expressed earlier are actually in the additional release conditions. I mean, you must participate in sex offense specific assessment. You must participate in a treatment program. You must participate in a mental health program. It's not as if the judge imposed SORNA and then didn't impose any of these other conditions. In that case, then the judge has a set team package doctrine concept, to use that as an analogy. You might want to send it back so the judge could consider how best to deal with this on a remand because he didn't deal with them initially. But they're already in the judgment, so I don't think it's necessary. And to address one other point that in the government's brief... I'm sorry, let me cut you off there. I'm not sure what you're asking for then. What's your optimal outcome here? That the court vacate a condition related to SORNA only. Okay. Okay. And one other aspect of the government's argument I'd like to address is they made a lot of references in the brief to the Delgado decision, which this court issued not too long ago. But there, what actually happened was Judge Conner got this question about whether SORNA applied to a prostitution case. The attorneys went to sidebar. He said, you know what? I don't know. We're going to have to do additional research and you're going to have to submit some stuff. And then there was an appeal. So yeah, the judge didn't make the determination that SORNA actually applied because he didn't know. And in this particular case... But that gets right to the heart. I'm glad you mentioned that anecdote, because it gets right to the heart of what I'm positing here, which is this court is in the business of reviewing what judges do, not district judges who say, I don't know, and just kick it to the circuit, right? Wouldn't this court benefit from detailed adversary proceedings in the district court where the issues about the line of demarcation that we talked about earlier, et cetera, et cetera, every iteration of whether SORNA does apply or doesn't apply, and if not, then what? And then we get a nice record that we can have the benefit of the adversary process in conjunction with the district court's thinking on the matter. That seems to me viscerally to be of tremendous assistance to this court if and when we have to review the case at that time. I don't disagree with you, Your Honor, that that's one way of handling it. The only thing here is that the court didn't issue a conditional directive. It issued a directive. You must comply with the requirements of SORNA. And then it went on to issue other conditions under the supervisory statute. Well, we could still say that that was legal error as part of our remand order, right? Correct. So in that scenario, in your hypothetical, then it would make sense to send it back if you felt that the court might not show it. The nice thing about that issue is that's a legal error that you and Mr. St. John have teed up for us well. It doesn't involve the kind of speculation or you know, difficult hypothesizing about what the district judge had in mind here. That is correct. And just one final point. I don't think it happens frequently, but it could happen. But a judge could order, you know, a five year supervised release term. You could have a substantial period of SORNA registration. As your Honor knows, these child porn cases where that happens, those sentences are substantial. They're 20, 25 years. Yeah, the person might get out and have 10 years of supervised release and might have to register for SORNA for years, but they're pretty old. So as a practical matter, it just doesn't come up that often. And as I said before, if this was really a SORNA case, we'd be under 3553K, not B. And if the government thought SORNA applied or thought this was a sex offense based on their definition, why didn't they include SORNA as one of their special conditions when they included all the others? For those reasons, we'd ask the court to vacate the SORNA registration requirement. Thank you. All right. Thank you very much, Mr. Ulrich. Thank you, Mr. St. John. The court will take the matter under advisement.